UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NORMAN B. LAWRENCE | CIVIL ACTION |
| VERSUS | No. 09-6906 |
| SLIDELL WELDING SERVICE, INC. | SECTION I/1 |

### ORDER AND REASONS

Before the Court is a motion for judgment on the pleadings[1] filed by third party defendant, Great American E&S Insurance Company ("Great American").[2] Defendant, Slidell Welding Service, Inc. ("SWSI"), opposes the motion. For the following reasons, the motion is **GRANTED**.

### *BACKGROUND*

On October 19, 2009, plaintiff, Norman B. Lawrence, filed a lawsuit against SWSI raising employment discrimination and intentional infliction of emotional distress claims.[3] Plaintiff, an African-American male, alleges that employees and managers at SWSI created "[a]n overwhelmingly hostile, racially charged environment . . ."[4] Plaintiff alleges he was called "boy" and "slave" and fellow employees hung a duck using a noose from the rafters of the

---

[1] As defendant, Slidell Welding Service, Inc., correctly notes, a motion for judgment on the pleadings is only appropriate after an answer has been filed. Great American concedes that because it has yet to file an answer, a motion for judgment on the pleadings is premature and it has requested that its motion be considered pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because neither party objects to the use of the 12(b)(6) standard, the Court will resolve this motion pursuant to Rule 12(b)(6).
[2] R. Doc. No. 16.
[3] R. Doc. No. 1.
[4] R. Doc. No. 1, para. 9.

1

workplace.[5] He also claims that fellow workers hazed him by throwing tennis balls and water balloons around him.[6]

On December 18, 2009, SWSI answered plaintiff's complaint and filed a third-party complaint against its commercial liability insurer, Great American.[7] SWSI alleges that plaintiff's claims are covered by its insurance policy ("the policy") and that Great American has a duty to defend.[8] On April 9, 2010, Great American filed this motion for judgment on the pleadings arguing that it has no duty to defend or indemnify SWSI against plaintiff's claims. Great American argues that it has no such duty because coverage for plaintiff's claims is excluded under the policy's employment related practices exclusion and because plaintiff's injury does not constitute an "occurrence" under the policy.[9]

## STANDARD OF LAW

**I.  Rule 12(b)(6)**

A district court can dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929, 940 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must

---

[5] R. Doc. No. 1, paras. 9, 10, 12.
[6] R. Doc. No. 1, para. 14.
[7] R. Doc. No. 9, p. 11.
[8] R. Doc. No. 9, p. 12.
[9] R. Doc. No. 16.

2

accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey,* 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974, 167 L. Ed. 2d at 949). "'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." *Id.* (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

## II.   Interpretation of Louisiana insurance contracts

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also id.* ("The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.")(citing La. Civ. Code art. 2045).[10] "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc.*, 180 F.3d 664, 668 (5th Cir. 1999). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Amoco Prod., 180 F.3d at 668-69* (quoting *Tx. Eastern Transmission*

---

[10] The parties do not dispute that Louisiana law applies to the insurance policy at issue in this case.

3

*Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998))(internal quotation marks omitted). "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* at 669.

Pursuant to Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader*, 848 So.2d 577, 580 (La. 2003). A court should not, however, interpret an insurance contract "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id.*

If there is any doubt or ambiguity as to a provision in an insurance contract, Louisiana law applies a rule of "strict construction" that requires that any doubt or ambiguity in an insurance contract be construed in favor of coverage to the insured and against the insurer who issued the policy. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994); *see also* La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."); *accord Valentine v. Bonneville Ins. Co.*, 691 So.2d 665, 668 (La. 1997); *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 741 (La. 1994). If an ambiguity exists, a court should "construe the policy 'to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry.'" *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 764 (quoting *Trinity Indus., Inc. v. Ins. Co. of N. America*, 916 F.2d 267, 269 (5th Cir. 1990)); *see Breland v. Schilling*, 550 So.2d 609, 610-

11 (La. 1989)("Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered.").

While the insured bears the burden of proving the existence of the policy and coverage, *i.e.* the "requirements" for coverage, *Tunstall v. Stierwald*, 809 So.2d 916, 921 (La. 2002)(citing *Collins v. New Orleans Pub. Serv., Inc.*, 234 So.2d 270 (La.App. 4 Cir. 1970)), the insurer bears the burden of proving the existence of policy limits or exclusions. *Tunstall*, 809 So.2d at 921 (citing *mass. Protective Ass'n v. Ferguson*, 168 La 271, 121 So. 863 (La. 1929)).

### III. Duty to defend

Pursuant to Louisiana law, "[a] liability insurer's duty to defend and the scope of its coverage are separate and distinct issues." *Mossy Motors, Inc. v. Cameras Am.*, 898 So.2d 602, 606 (La.App. 4 Cir. 2005)(citing *Dennis v. Finish Line, Inc.*, 636, So.2d 944, 946 (La.App. 1 Cir. 1994)). It is well recognized that "the obligation of a liability insurer to defend suits against its insured is generally broader than its obligation to provide coverage for damages claims." *Id.* (citing *Steptore v. Masco Constr. Co., Inc.*, 643 So.2d 1213, 1218 (La. 1994)). "The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the 'eight corners rule,' under which an insurer must look to the 'four corners' of the plaintiff's petition and the 'four corners' of [the insurer's] policy to determine whether it owes that duty." *Id.* (citing *Vaughn v. Franklin*, 785 So.2d 79, 84 (La.App. 1 Cir. 2001)); *see also Henly v. Phillips Abita Lumber Co.*, 971 So.2d 1104, 1109 (La.App. 1 Cir. 2007); *see Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005).

"[T]he factual allegations of [plaintiff's] petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy." *Mossy*, 898 So.2d at 606. "[T]he test is not whether the allegations unambiguously

5

assert coverage but rather whether they do not unambiguously exclude coverage." *Id.* "[E]ven though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded." *Id.* (citing *Employees Ins. Representatives, Inc. v. Employers Reinsurance Corp.*, 653 So.2d 27, 29 (La.App. 1 Cir. 1995)).

### *DISCUSSION*

Great American contends that the policy's employment-related practices exclusion ("ERPE") unambiguously precludes coverage in this matter.[11] The policy's ERPE provides:

> This insurance does not apply to:
> "Bodily injury"[12] to:
> 1. a person arising out of any:
>    a) refusal to employ that person;
>    b) termination of that person's employment; or
>    c) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person[13]

Although SWSI has cited cases from other jurisdictions, courts in Louisiana interpreting identical language have found claims, both under federal and state anti-discrimination laws, similar to plaintiff's hostile work environment claims to be excluded by an ERPE. *See Adams v. Pro Sources, Inc.*, 231 F.Supp.2d 499, 503 (M.D.La. 2002)(finding that plaintiff's claims based on a hostile work environment and retaliation were "clearly excluded" by the policy's employment-related practices exclusion) [14](citing *Lawson v. Straus*, 673 So.2d 223, 225-26

---

[11] Because of this Court's opinion with respect to the employment-related practices exclusion, the Court does not reach the parties' arguments with respect to the occurrence language of the policy.
[12] Great American does not argue that coverage should be excluded because plaintiff's claims do not constitute a "bodily injury."
[13] R. Doc. No. 9-2, p. 12.
[14] SWSI argues that *Adams* requires that the statements directed toward the plaintiff must be "part of the normal and existing employment practices of the insured" in order to be excluded from coverage. R. Doc. No. 20, p. 10. SWSI ignores, however, that the *Adams* court applied such a test only with respect to plaintiff's defamation claims and

6

(La.Ct.App. 4 Cir. 1996)); *Devillier v. Fidelity & Deposit Co. of Maryland*, 709 So.2d 277, 281 (La.App. 3 Cir. 1998); *see also Oak Ridge Park, Inc. v. Scottsdale Ins. Co.*, 234 F.3d 706, 2000 WL 1598042, at *2 (5th Cir. 2000).[15]

A review of the allegations made in plaintiff's complaint and the language of the insurance policy, itself, reveals that the plain and unambiguous language of the policy excludes coverage in this matter. Plaintiff alleges that while at SWSI he was subject to severe harassment and discrimination through the creation of a hostile work environment. The plain language of the policy excludes coverage for employment-related acts or omissions including "harassment, humiliation or discrimination." Such language expressly and unambiguously excludes coverage for the claims raised by plaintiff. As noted above, "[w]hen the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Accordingly, SWSI's coverage claim is precluded by the ERPE.

## *CONCLUSION*

For the reasons stated above,

**IT IS ORDERED** that the motion is **GRANTED** and that SWSI's claims against Great American are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, June 25, 2010.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

only to determine whether a statement, allegedly made after the termination of the employment relationship, could be considered an employment related practice. *See Adams*, 231 F.Supp.2d at 505.

[15] Although the Fifth Circuit's opinion did not cite the policy language, the underlying district court opinion did cite the language of the employment-related practices exclusion. *See Oak Ridge Park, Inc. v. Scottsdale Ins. Co.*, 1999 WL 731417, at *3 (E.D.La. 1999).